IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 16-cv-02604-RBJ

KENNITH MEADOWS,

    Petitioner,

v.

RANDY LIND, Warden,

    Respondent.

---

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

---

This matter is before the Court on the Third Amended Petition for Writ of Habeas Corpus (ECF No. 62) (the "Third Amended Petition") filed April 12, 2019 by Petitioner Kennith Meadows, seeking relief pursuant to 28 U.S.C. § 2254. Mr. Meadows challenges the validity of his conviction in Jackson County, Colorado, Combined Courts case number 07CR11. After reviewing the entire record before the Court, the Court FINDS and CONCLUDES that the Third Amended Petition should be denied, and the case dismissed with prejudice.

## I. BACKGROUND.

**A. <u>Procedural Background</u>.**

Mr. Meadows is a prisoner in the custody of the Colorado Department of Corrections. He commenced this action by filing pro se an application for a writ of habeas corpus (ECF No. 1). On November 17, 2016, still proceeding pro se, Mr. Meadows filed an amended application (ECF No. 8) raising two claims for relief: a Fifth Amendment claim asserting a violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and a Sixth Amendment claim asserting a violation of

his right to a fair and impartial jury drawn from a fair cross-section of the community.

On August 31, 2017 the Court granted Mr. Meadows' motion for appointment of counsel, and on September 11, 2017 counsel for Mr. Meadows entered an appearance. On March 19, 2018 the Court granted counsel's motion to file a Second Amended Petition (ECF No. 42). The Second Amended Petition presents one claim, i.e., that trial counsel, Trevor McFee, was ineffective. Mr. Meadows concedes in the Second Amended Petition that the two claims he raised in the prior pro se pleading are not tenable claims. On June 26, 2018 Respondents filed a Response to Second Amended Habeas Application (ECF No. 46) and on September 17, 2018 Mr. Meadows filed a Reply Brief (ECF No. 49).

In November 2018 the Court determined it was necessary to hold an evidentiary hearing, and a hearing was scheduled for May 29, 2019. On March 26, 2019, the Court granted Mr. Meadows leave to file a Third Amended Petition to clarify the ineffective assistance of counsel claim. As noted above, the Third Amended Petition was filed on April 12, 2019. No further briefs were filed, and Mr. Meadows agreed to stipulate "that a non-response [to the Third Amended Petition] constitutes no acquiescence to the amendment's additional contents." (ECF No. 58 at p.9.)

On May 29, 2019 the Court held the referenced evidentiary hearing and heard testimony from three witnesses: Trevor McFee, Eric Klein, and Greg Greer.

**B. Factual Background.**

Mr. Meadows was convicted by a jury in 2008 on one count of sexual assault on a child by one in a position of trust and one count of aggravated incest. His ineffective assistance of counsel claim relates to Mr. McFee's performance during voir dire when the trial court excused a

number of hard-of-hearing jurors. As voir dire commenced, the judge in his introductory remarks invited anyone with a hearing problem to come up to the front and told the panel to "raise your hand, put it by your ear, and I'll know you can't hear me." (Trial Tr., Vol. 1 (July 21, 2008) at p.25.) The judge reiterated this instruction a short time later:

> And if any of you have any difficulty hearing me for any reason, please indicate so by raising your hand; and I'd ask the bailiff to wave to me so that I see it, and I'll go ahead and try to bring you forward so you can hear.
>
> We'll try to accommodate any of that. We can have the jurors sit close here, as close as we can. The witness is going to be over there.
>
> And make sure that you get a front seat, so to speak, if we can help you, in – in making sure you hear everything that goes on here.

(*Id.* at p.28.) Once the judge began asking questions, Juror Honkey, who had not yet been called up, raised his hand and told the judge "I haven't heard practically anything that you said" and "I'm partially deaf." (*Id.* at pp.41-42.) The judge responded by stating "I'm sorry then. For me, I'm shouting. That's as high as I get." (*Id.* at p.42.) The judge also advised Juror Honkey that, "When you get called up here – I'm sorry. You may want to get a medical thing. You can get excused if you have medical – I generally – With this number of jurors, I am not going to let anybody go until I have to, okay?" (*Id.*)

When Juror Bauman was called forward, he affirmed that he had "heard the Court's inquiry so far" but also stated he has sleep apnea and was "hard [of] hearing." (*Id.* at pp.50-51.) The judge considered seating Juror Bauman "right in front, but I'm not sure I'll be able to see you bob off either." (*Id.*) Juror Bauman was dismissed.

When called, Juror Wamsley told the judge "I can't hardly hear what you say" and

3

affirmed he was having trouble hearing. (*Id.* at p.75.) The judge indicated "[i]f it was a really short trial, Mr. Wamsley, I'd keep you on and we'd try to speak up loud enough and directly to you. But this is a long trial. I'm going to get involved in other things and won't pay attention." (*Id.*) The judge then stated, "Unless there is an objection or further inquiry –" and Mr. McFee interjected, "Judge, do we not have some sort of amplification devices that we could assist with – ." (*Id.*) The clerk responded "[n]ot here," and the judge stated:

> Remember where you are, Mr. McFee; we do not have that here.
>
> I'm sure they do down in Fort Collins, but we don't have it available, and I'm not sure I can get it here in a reasonable time. We do have some assistance that's available in other parts of the district, probably, but not right here.

(*Id.* at pp.75-76.) Juror Wamsley was excused.

Juror Follet also reported having trouble hearing and hearing only "some" of what was being said. Mr. McFee objected to dismissing Juror Follett and stated:

> I understand we don't have the equipment here, but this is not the first. I think there's another gentleman who indicated he had a similar concern as well.
>
> And I think we have the obligation to provide these folks the necessary equipment so that they can serve as jurors if needed. So –."

(*Id.* at p.79.) In response the judge stated:

> I understand, Counsel, but I'm not sure we can get that here within a reasonable time. I could recess, I suppose, and try to get it here tomorrow.
>
> But this juror is giving me a very quizzical look, and I'm speaking up as loud as I get. So I'm going to go ahead and excuse Miss Follett.

4

(*Id.* at p.80.)  Mr. McFee said nothing further and did not request a continuance.

When Juror Honkey was called forward, he affirmed that he previously had reported having a hearing problem.  The following exchange occurred:

> THE COURT:  You haven't heard what I've said so far?
>
> PROSPECTIVE JUROR:  Very little of it.  I can hear a little bit but not very well.
>
> THE COURT:  If I speak up this loud, can you hear me?
>
> PROSPECTIVE JUROR:  Yes, I can.
>
> THE COURT:  Have you heard what I've said so far?
>
> PROSPECTIVE JUROR:  No sir, I sure haven't.
>
> THE COURT:  Again, this is a longer trial.
>
> If it was a shorter trial, I'd try to keep you and have you sit close, as close as we can, to the witnesses, and so on.
>
> PROSPECTIVE JUROR:  I'm sorry, I still didn't hear that.
>
> THE COURT:  That's as good as I get.
>
> All right.  Unless there's an objection – And I – your objection would stand with regards to the equipment.  I'm not sure the equipment would help us in these events.
>
> So the Court's going to go ahead and excuse the juror over the objections of the defense.

(*Id.* at pp.82-83.)

Juror Gary also indicated he had a hearing problem, stating "I'm sorry sir, I've been trying – I had my hearing aid turned up, and I can hear about 50 percent of what you say and absolutely nothing that the counsels have to say."  (*Id.* at p.114.)  The judge noted Mr. McFee's

5

objection but excused Juror Gary, stating "I understand, but I'm not sure that the equipment even would assist." (*Id.* at pp.114-15.) The prosecutor then offered to "call down and have one of my witnesses bring up the technology from Larimer County" to assist the next set of jurors the following day. (*Id.* at p.115.) The judge responded as follows:

> My experience with that has not been that it's all that great. So I'm not convinced that it will be of any assistance.
>
> So I'm going to excuse the juror and note my view; there is an obligation to assist, but at what point do you say, okay.
>
> I've been speaking as loud as I can and he's within about 4 feet of me and says he can't hear, and I don't think there's any equipment that's going to fix that.

(*Id.*)

Juror Gerrard also indicated difficulty hearing certain tones as a result of tinnitus, but Juror Gerard was excused for cause.

When voir dire resumed the following day, the judge again invited any members of the jury panel with a hearing problem either to sit up front or raise their hand. (Trial Tr., Vol. 2 (July 22, 2008) at pp.11, 13-14, 20.) When another juror indicated some difficulty hearing on day two, the judge asked if anybody was able to do anything about getting the hearing assistive device. The prosecutor responded "[u]nfortunately, my witnesses are coming up late this afternoon, so it wouldn't have happened. So I apologize." (*Id.* at p.42.)

**C. <u>Ineffective Assistance of Counsel Claim</u>.**

According to Mr. Meadows, his Sixth Amendment right to effective assistance of counsel was violated because Mr. McFee

> lodged no legally sound objections when the trial judge dismissed the hard-of-hearing jurors, all but one discharged for no reason

> apart from their disability (the judge ousted the fifth juror only
> partly for hearing issues). Although Meadows had a right to
> protest a jury selected in an arbitrary and discriminatory fashion, a
> right secured by state and federal law, defense counsel either
> remained silent in the face of jurors' excusal or he issued an inert,
> empty objection, a legal nullity based on neither sound argument
> or controlling authority.

(ECF No. 62 at p.9.) More specifically, Mr. Meadows asserts that:

> Defense counsel wholly failed to object to two dismissals, and his
> protest to the remaining three were unaccompanied by any legal
> argument. The lawyer gestured at some vague, unspecified
> "obligation" to accommodate the disabled jurors. That's not good
> enough, though. He never demanded a pause in the proceedings
> so the amplification devices to which he referred could be brought
> to the courthouse, or at least so a proper inquiry into their
> availability and efficacy could be conducted. Worse, he never
> seized on the due-process, equal protection, and state-law
> violations unfolding before his eyes, failing to lodge an objection
> based on the precedents and principles described below.

(ECF No. 62 at 16.) Mr. Meadows asserts that competent counsel would have lodged objections arguing he was being denied due process in the selection of his jury because dismissing the hard-of-hearing jurors violated the jurors' rights under Title II of the Americans with Disabilities Act ("ADA"), the constitutional right of access to the courts, and equal protection.

**D. <u>Evidentiary Hearing</u>.**

Three witnesses testified at the evidentiary hearing. Mr. McFee testified on direct examination as follows: his contemporary notes reveal he believed dismissal of the hard-of-hearing jurors was a potential appellate issue; his contemporary notes do not indicate whether he thought the dismissed hard-of-hearing jurors would be favorable or unfavorable jurors or that he made a conscious decision to allow them to be dismissed; he did not seek a continuance or a recess to obtain assistive hearing devices or an opportunity to research the issue; he did not tie

his objection to any statutory or constitutional provision; and he currently believes his objection to dismissal of the hard-of-hearing jurors was not adequate, but he thought at the time that the objection was adequate. On cross-examination, Mr. McFee testified that he does not have a lot of independent memory of the specifics of the voir dire process at Mr. Meadows' trial; he knew he could request a recess or continuance if he believed it would have been beneficial for Mr. Meadows; and it was his intent during voir dire to preserve the issue regarding dismissal of the hard-of-hearing jurors for appeal, and he completed an appeal packet noting the issue.

Mr. Meadows also presented the testimony of two expert witnesses. Both experts opined that Mr. McFee's representation during voir dire was ineffective. Eric Klein testified that Mr. McFee was ineffective by failing to object to the dismissal of Juror Wamsley, by failing to lodge a proper objection to the other hard-of-hearing jurors who were dismissed, and by failing to request a recess to obtain assistive hearing devices. Greg Greer testified that Mr. McFee was ineffective and failed to preserve the record properly with respect to dismissal of the hard-of-hearing jurors, either by failing to object or failing to object properly. Mr. Klein and Mr. Greer also both agreed that, to the extent Mr. McFee made a strategic decision to allow the hard-of-hearing jurors to be dismissed and preserve the issue for appeal, that decision was not reasonable because he lacked sufficient information on which to base the decision.

## II. EXHAUSTION AND PROCEDURAL DEFAULT.

Respondents first argue the ineffective assistance of counsel claim should be dismissed because the claim is not exhausted. Mr. Meadows concedes the claim has not been fairly presented to the state's highest court. However, he contends the claim may not be dismissed for failure to exhaust state remedies because he no longer has an adequate state remedy available to

8

him.  More specifically, Mr. Meadows asserts that the time has run to file a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure and, because he previously filed a postconviction Rule 35(c) motion in August 2016, Colorado's rule against successive petitions also prevents him from filing another Rule 35(c) motion.  Respondents counter that an adequate state remedy is still available because the Rule 35(c) motion Mr. Meadows filed in August 2016 remains pending and Mr. Meadows can amend the motion to raise the ineffective assistance of counsel claim he is asserting in this action.

Mr. Meadows has the better argument.  Respondents are correct that the trial court noted in its Order Denying Motion to Review 35(c) Claims that the court lacked jurisdiction to rule on Mr. Meadows' ineffective assistance of counsel claims because his appeal from the denial of another postconviction motion was pending in the Colorado Court of Appeals at that time.  (*See* ECF No. 46-3.)  However, the trial court also clearly "DENIED" the Rule 35(c) motion.  (*See id.*)  Therefore, it does not appear that the Rule 35(c) motion is pending and can be amended to raise the ineffective assistance claim.

Because a new Rule 35(c) motion would be barred as untimely under § 16-5-402 of the Colorado Revised Statutes, Mr. Meadows no longer has an adequate state remedy available to him and his ineffective assistance of counsel claim is procedurally defaulted.  Mr. Meadows contends he can overcome the procedural default by relying on *Martinez v. Ryan*, 566 U.S. 1 (2012).  In *Martinez*, the Supreme Court held that if a claim of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding under state law, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel

9

in that proceeding was ineffective."  *Id.* at 17.   The Supreme Court subsequently extended the rule in *Martinez* to circumstances in which state law does not require claims of ineffective assistance of trial counsel to be brought in collateral proceedings, but "make[s] it 'virtually impossible' for an ineffective assistance claim to be presented on direct review."  *Trevino v. Thaler*, 569 U.S. 413, 417 (2013).

To meet the narrow exception announced in *Martinez*, Mr. Meadows must establish four elements concerning his defaulted ineffective assistance of trial counsel claim: (1) the claim is substantial; (2) the state postconviction counsel was ineffective or there was no postconviction counsel; (3) the state postconviction proceeding must have been the initial review proceeding in respect to the ineffective assistance of trial counsel claims; and (4) the claims were required, under state procedural law, to be raised in the state postconviction proceeding or the state's procedural framework makes it highly unlikely that the claim could be raised on direct appeal. *See Trevino*, 569 U.S. at 423, 429.   A claim is "substantial" if the claim has some merit.   *See Martinez*, 566 U.S. at 14.

Respondents do not address Mr. Meadows' argument that he can overcome the procedural default of his ineffective assistance of counsel claim under *Martinez*.   Instead, Respondents contend the ineffective assistance of counsel claim should be rejected on the merits. Therefore, the Court will address the merits of the claim.

### III. MERITS OF THE CLAIM.

As an initial matter, Mr. Meadows contends the deferential standards under 28 U.S.C. § 2254(d) are not applicable to the Court's review because the ineffective assistance of counsel claim was not adjudicated on the merits in state court.   Respondents do not disagree.

10

Therefore, the Court reviews the claim *de novo*. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

To establish counsel was ineffective Mr. Meadows must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If Mr. Meadows fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim fails. *See id.* at 697. Importantly, these standards are not meant to be applied in a "mechanical" fashion, and "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

**A. Deficient Performance Prong.**

Under the deficient performance prong, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. There is "a strong presumption" that counsel's performance "falls within the wide range of reasonable professional assistance." *Id*. It is Mr. Meadows' burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id*.

The relevant facts demonstrate that four potential jurors were dismissed based on their inability to hear the proceedings. The four jurors in question are Wamsley, Follett, Honkey, and Gary. At various points, Mr. Meadows also has been critical of Mr. McFee's performance with respect to two other potential jurors, Bauman and Girard, but Bauman and Girard were not dismissed because of any hearing problems. Juror Bauman was dismissed because of his sleep apnea, and Juror Girard was dismissed for cause. Therefore, the Court examines the adequacy of Mr. McFee's performance during voir dire only with respect to Wamsley, Follett, Honkey,

11

and Gary.

As described above, Mr. McFee first raised the issue of obtaining assistive-hearing devices with respect to Juror Wamsley, but he did not formally object to the dismissal of Juror Wamsley. Mr. McFee did lodge an objection when Juror Follett was dismissed, and a continuing objection was noted when Jurors Honkey and Gary were dismissed. Mr. McFee did not specifically reference the ADA or any provision of the federal Constitution in connection with his objection to the dismissals of Follett, Honkey, and Gary.

Mr. Meadows argues Mr. McFee was ineffective because he was ignorant of relevant law that precludes irrational and discriminatory dismissal of disabled jurors. Respondents counter that Mr. McFee's performance was not deficient because there is no specific case holding that counsel is ineffective by failing to argue a defendant's due process right to a fair trial is violated by an alleged ADA violation against prospective jurors, and counsel is not ineffective by failing to invent and raise a "novel or long-shot" argument. Respondents also contend that deficient performance cannot be shown by an attorney's failure to raise an argument that would have failed.

Respondents cite *United States v. Mason*, 774 F.3d 824 (4th Cir. 2014), in support of the contention that counsel does not perform deficiently by failing to raise a novel or long-shot argument, but that case is distinguishable. In *Mason*, the Fourth Circuit reasoned that counsel was not ineffective for failing to raise a novel or long-shot contention because a stronger argument existed and was raised. *See id.* at 830-31 ("We cannot say Mason's attorneys were ineffective for choosing the route more commonly tread and more likely to be successful before the district and appellate courts."). Here, Mr. McFee did not omit the constitutional and ADA

12

arguments in favor of a stronger alternative argument.

The Court also is not persuaded by Respondents' argument that the underlying ADA and due process claims lack merit. It was clear at the time of Mr. Meadows' trial in 2008 that "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). Thus, states "cannot, consistent with due process, subject a defendant to indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States." *Peters v. Kiff*, 407 U.S. 493, 502 (1972) (opinion of Marshall, J.). This is so because "[i]llegal and unconstitutional jury selection procedures cast doubt on the integrity of the whole judicial process." *Id.*; *see also United States v. Salamone*, 800 F.2d 1216, 1229 (3d Cir. 1986) (the Fourteenth Amendment guarantees a jury from which no group was "summarily excluded without regard to their ability to serve as jurors."). Furthermore, "a defendant has standing to litigate whether his conviction was procured by means or procedures which contravene due process." *Campbell v. Louisiana*, 523 U.S. 392, 401 (1998).

It also was clear in 2008 that, under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II of the ADA "seeks to enforce th[e] prohibition on irrational disability discrimination" found in the Equal Protection Clause as well as the constitutional right of access to the courts. *Tennessee v. Lane*, 541 U.S. 509, 522-23 (2004). The definition of a "public entity" in the ADA includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42

U.S.C. § 12131(1). Persons with disabilities are "qualified" if they, "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meet[] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Consistent with the ADA, "the State of Colorado does not allow the automatic exclusion of prospective jurors with hearing problems." *Carrillo v. People*, 974 P.2d 478, 492 n.10 (Colo. 1999).

Thus, the Court agrees with Mr. Meadows that competent counsel in 2008 would have been aware of the applicability of the ADA and a defendant's due process right to a fair trial and a jury selected by means that are neither arbitrary nor discriminatory. Nevertheless, the Court cannot conclude Mr. McFee's performance was constitutionally deficient under *Strickland*.

As noted above, the Court's analysis begins with the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 1140. It is true that this presumption "dissipates when an attorney has a demonstrated ignorance of law directly relevant to a decision." *Hooks v. Workman*, 689 F.3d 1148, 1198 (10th Cir. 2012) (internal quotation marks omitted). However, the Court is not persuaded that this is a case in which Mr. McFee was completely ignorant of the relevant legal principles. Mr. McFee objected to the dismissal of three of the four jurors in question (Follett, Honkey, and Gary) and, even with respect to the other juror (Wamsley) who was the first juror in question to be dismissed, Mr. McFee raised the question of whether an accommodation was required. Thus, the record reflects that Mr. McFee was not completely ignorant of the impropriety of dismissing potential

jurors solely because of a hearing disability. In any event, even if the Court did conclude that Mr. McFee was completely ignorant of the relevant law, "an attorney's unawareness of relevant law at the time he made the challenged decision does not, in and of itself, render the attorney's performance constitutionally deficient." *Bullock v. Carver*, 297 F.3d 1036, 1048 (10th Cir. 2002). The Court still must "ask whether, in light of all the circumstances, the attorney performed in an objectively reasonable manner." *Id.* at 1051. The Court concludes Mr. McFee's performance was objectively reasonable.

In hindsight and with considerable time to consider the issue, Mr. Meadows asserts, and the expert witnesses now opine, that Mr. McFee's performance was deficient because he failed to link his objection to specific legal principles under the ADA and the federal Constitution. However, the Court must "free [its deficient performance] inquiry from 'the distorting effects of hindsight' by indulging in a strong presumption counsel acted reasonably." *Mayes v. Gibson*, 210 F.3d 1284, 1288 (10th Cir. 2000) (quoting *Strickland*, 466 U.S. at 689); *see also Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (counsel's performance must be evaluated from counsel's perspective at the time of the alleged error and "every effort should be made to eliminate the distorting effects of hindsight.").

The Court is not persuaded that Mr. McFee's failure to articulate the precise constitutional basis for his objection on the spur of the moment rises to the level of constitutionally deficient performance. That is, the Court is not persuaded Mr. McFee's performance was deficient by failing to articulate an objection that joined the applicable principles under Title II of the ADA to Mr. Meadows' own constitutional right to a fair jury selection procedure. To reiterate, the record demonstrates Mr. McFee was aware of the issue

because he asked about an accommodation when the first relevant juror was dismissed, and he objected to the dismissal of the other three jurors in question. The record also demonstrates Mr. McFee's question about an accommodation and objections were sufficient to make the trial court aware of the ongoing problem because the trial court repeatedly talked about the availability and efficacy of assistive hearing devices. Thus, the Court finds that Mr. McFee's performance was not constitutionally deficient under the circumstances.

In addition, Mr. McFee testified at the evidentiary hearing that it was his intent to preserve the issue of the improper dismissal of the hard-of-hearing jurors for appeal. This testimony is supported by his contemporary notes and the appellate packet he prepared in 2008. Mr. McFee also testified that he knew he could request a continuance if he thought it would be beneficial for Mr. Meadows. Thus, the record before the Court supports the conclusion that Mr. McFee made a strategic decision not to push the issue further during voir dire. It is not clear if that decision was driven by a desire not to irk the judge or perhaps the members of the jury panel who would be forced to return whenever the assistive hearing devices could be obtained or for some other reason. Regardless, the Court is not persuaded that Mr. McFee's failure to request a continuance demonstrates deficient performance.

Mr. Meadows correctly points out that Mr. McFee had no information on which to make a reasoned determination to assent to dismissal of the jurors in question because they would have been bad for the defense. But it is equally true that there was no indication any of the jurors in question would have been good for the defense. In any event, even if Mr. McFee's "strategy was ill-informed and thus does not qualify for the virtually unchallengeable presumption of reasonableness, a court reviewing the record before it might still conclude that counsel

performed in an objectively reasonable manner." *Bullock*, 297 F.3d at 1046. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam); *see also Bullock*, 297 F.3d at 1048 ("the Sixth Amendment does not guarantee an errorless trial, and prevailing professional norms do not require perfection at trial.") (internal quotation marks omitted).

The critical question regarding deficient performance under *Strickland* is not what Mr. McFee could have done differently or what the best lawyer would have done in the same circumstances, but whether Mr. McFee's performance at the time was within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The Court concludes that Mr. McFee's performance, judged from his perspective in the midst of voir dire, was reasonable. The Court emphasizes again that "the Constitution guarantees only a fair trial and competent attorney. It does not mandate that trial counsel will recognize and raise every conceivable constitutional claim. This is true whether the failure to raise the constitutional claim is based upon ignorance of the law or a mistake in judgment . . . ." *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983) (cited in *Bullock*, 297 F.3d at 1048) (internal quotation marks and citation omitted). Ultimately, the Court is unable to conclude that Mr. McFee "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Therefore, Mr. Meadows' ineffective assistance of counsel claim fails on the deficient performance prong.

**B. Prejudice Prong.**

Prejudice under *Strickland* generally requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

17

*Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Mr. Meadows does not argue that he can demonstrate a reasonable probability of a different outcome at his trial but for Mr. McFee's alleged errors. He also has abandoned any argument that he can demonstrate prejudice by showing a reasonable likelihood of a different result on appeal. Instead, Mr. Meadows argues prejudice under *Strickland* is presumed in this case because the right to a jury selected in a non-discriminatory manner is a structural error. *See Peters*, 407 U.S. at 503 (whenever an identifiable "segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable."). Citing *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), Respondents counter that prejudice is not presumed because a claim of structural error raised in the context of an ineffective assistance of counsel claim still requires a showing of prejudice under *Strickland*.

In *Weaver*, the Supreme Court resolved a disagreement "about whether a defendant must demonstrate prejudice in a case like this one – in which a structural error is neither preserved nor raised on direct review but is raised later via a claim alleging ineffective assistance of counsel." *Id.* at 1907. More specifically, *Weaver* addressed counsel's failure to object to the closure of the courtroom during jury selection. *Id.* The Supreme Court concluded prejudice under *Strickland* must be shown in that context because a public-trial violation does not necessarily result in fundamental unfairness to the defendant in every case. *See id.* at 1909-10.

*Weaver* does not answer the specific question of whether prejudice is presumed in the instant action because *Weaver* was specifically limited to "the context of trial counsel's failure to

18

object to the closure of the courtroom during jury selection." *Id.* at 1907. However, *Weaver* guides the Court's analysis of the prejudice prong. As the Supreme Court noted, the doctrines of structural error and ineffective assistance of counsel are intertwined, and "the reasons an error is deemed structural may influence the proper standard used to evaluate an ineffective-assistance claim premised on the failure to object to that error." *Id.* at 1907. In addition, the failure to raise the asserted structural error on direct review also plays an important role in the Court's analysis.

> In the criminal justice system, the constant, indeed unending, duty of the judiciary is to seek and to find the proper balance between the necessity for fair and just trials and the importance of finality of judgments. When a structural error is preserved and raised on direct review, the balance is in the defendant's favor, and a new trial generally will be granted as a matter of right. When a structural error is raised in the context of an ineffective-assistance claim, however, finality concerns are far more pronounced.

*Id.* at 1913. "In sum, [because] an ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, thus undermining the finality of jury verdicts, . . . the rules governing ineffective-assistance claims must be applied with scrupulous care." *Id.* at 1912 (internal quotation marks and alteration omitted). Nevertheless, because the *Strickland* standards are not meant to be applied in a "mechanical" fashion, the Supreme Court in *Weaver* assumed that prejudice also could be shown by a demonstration of fundamental unfairness. *See id.* at 1910-11.

Mr. Meadows fails to demonstrate that the dismissal of the hard-of-hearing jurors at his trial without pausing the proceedings to obtain assistive hearing devices resulted in a trial that was fundamentally unfair. He does not argue, and there is no indication in the record before the

19

Court, that any juror who determined he was guilty was biased in any way. There also is no connection between the dismissal of the hard-of-hearing jurors and the evidence of Mr. Meadows' guilt. Thus, even assuming a showing of fundamental unfairness could be sufficient, Mr. Meadows has not made such a showing. As a result, he is not entitled to relief on his ineffective assistance of counsel claim absent a showing of a reasonable probability of a different result. Because he concedes he cannot make such a showing, the ineffective assistance of counsel claim also fails on the prejudice prong.

The defendant's failure to persuade the Court vis-à-vis the prejudice prong is not quite as clear as his failure to show deficient performance, perhaps because the parties primarily have emphasized the first prong in their briefs. However, the Court cannot find that either prong has been established, and of course, they both must be for the defendant to succeed here.

## IV. ORDER.

The Third Amended Petition for Writ of Habeas Corpus (ECF No. 62) is denied, and this case is dismissed with prejudice. However, the Court finds that the issues are debatable among jurists of reason, and therefore the Court issues a certificate of appealability pursuant to 28 U.S.C. § 2253(c). *See Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000).

DATED August 13, 2019.

BY THE COURT:

*[signature]*

R. BROOKE JACKSON
United States District Judge